768 A.2d 656

**Joseph Marlo REDMAN**

v.

**STATE of Maryland.**

No. 39, Sept. Term, 2000.

Court of Appeals of Maryland.

March 9, 2001.

Margaret L. Lanier, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Ann N. Bosse, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and LAWRENCE F. RODOWSKY (retired, specially assigned) JJ.

RAKER, Judge.

This is a case arising out of a petition for relief under the Post Conviction Procedure Act, Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.) Article 27, § 645A, alleging ineffective assistance of counsel under the Sixth Amendment to the United States Constitution. The question we must decide is whether Petitioner's federal constitutional right to effective assistance of counsel under the Sixth Amendment was violated because his trial counsel was unaware that, based on Article IV, § 8 of the Maryland Constitution, Petitioner, who was charged with first degree murder and subject to the death penalty, had an automatic right to remove the case to another county. The Circuit Court for Allegany County granted Petitioner a new trial, and the Court of Special Appeals reversed the Circuit Court. This Court granted the Petition for Writ of Certiorari, and we shall affirm the Court of Special Appeals.

### I.

Joseph Marlo Redman, Petitioner, was indicted in 1994 by the Grand Jury for Allegany County for first degree murder, robbery, attempted first degree rape and other related offenses. The State filed a notice of intention to seek the death penalty. The jury convicted Petitioner of first degree murder and attempted first degree rape. Petitioner waived his right to be sentenced by the jury and elected to be sentenced by the court. *See* Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.) Art. 27, § 413(b)(3); *Ware v. State,* 360 Md. 650, 663, 759 A.2d 764, 770 (2000). The court sentenced Petitioner to life without parole on the murder conviction and to ten years consecutive on the attempted rape conviction. In an unreported opinion, the Court of Special Appeals affirmed the judgments of the Circuit Court.

On April 11, 1997, Redman filed in the Circuit Court a Petition for Post Conviction Relief, contending, *inter alia*, that his trial counsel rendered ineffective assistance by failing to seek a change of venue. Petitioner argued that because his trial counsel was unaware of the Maryland constitutional right affording automatic removal in capital cases, his performance was deficient under the Sixth Amendment.

At the post-conviction hearing, Petitioner's trial counsel admitted that he was unaware that a capital defendant has the right of automatic removal of the case to another county. He considered filing a motion for change of venue, but concluded that it was not in Petitioner's interest to do so for several reasons. First, he felt that seeking removal would have been a double edged sword because a court hearing on the motion would likely have generated publicity anew.[1] Second, because a defendant cannot select the new county, removal could put a defendant in a worse position because the case could be removed to a less favorable county.[2] He also weighed the impact of removal in light of the racial aspect of the case and any potential local biases and prejudices.[3]

Defense counsel then addressed his preparation for voir dire and the procedures he followed during the jury selection process. He stated that he consulted with a colleague who had tried a death penalty case and who had provided him with sample voir dire questions. Counsel testified that, at the conclusion of the voir dire, he was satisfied with the impartiality of the jury.

Petitioner testified at the hearing that he wanted his case removed from Allegany County and that he had expressed his

---

**1.** Despite apparent initial local media interest in the crime and the charging of Redman, the media had ignored the case for the three months prior to when Redman's trial counsel decided not to seek removal.

**2.** It appears that Redman's trial counsel meant, by less favorable, a county that may have had a history of imposing a sentence of death more often than Allegany County.

**3.** Redman is African American and the victim was Caucasian.

desire to his attorney.[4] He did not know, and his lawyer did not inform him, that he had an automatic removal right. He stated that, had he known of the right, he would have "demanded" to exercise it.

The trial court granted post-conviction relief and ordered a new trial. The court held: "While it is not a due process violation if [the] accused is not advised of the right, counsel's failure to advise Petitioner of the right casts significant doubt upon the fundamental reliability of the proceeding in terms of an ineffective assistance of counsel analysis" (internal citation omitted).

The State's Application for Leave to Appeal was granted by the Court of Special Appeals, and that court reversed the post-conviction court. We issued a Writ of Certiorari on Petitioner's motion and affirm the intermediate appellate court.

Petitioner argues that he is entitled to a new trial with the automatic right of removal because his trial counsel did not file a suggestion of removal at his 1994 trial. He maintains that counsel's lack of knowledge of Article IV, § 8(b) of the Maryland Constitution constituted ineffective assistance of counsel under the Sixth Amendment. Relying primarily on *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), he argues that prejudice should be presumed because the right of removal is a fundamental right or qualifies as a structural error not susceptible to establishing prejudice.[5] He further argues that assuming, *arguendo,* that

---

4. Redman's trial counsel testified he did not recall whether Redman wanted the case removed.

5. Petitioner is inappropriately scrambling the eggs of *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), and *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Fulminante* was a refinement of the federal harmless error analysis; *Strickland* involved an evaluation of counsel's performance and an assessment of prejudice. Our research has disclosed only one case actually applying structural error analysis as a part of the *Strickland* prejudice inquiry. *See McGurk v. Steinberg,* 163 F.3d 470 (8th Cir.1998).

he must prove prejudice, the denial of the right to make his defense before a different jury constitutes prejudice.

The State's argument is threefold. First, the State argues that counsel's performance was not deficient because whether

---

In *Arizona v. Fulminante,* 499 U.S. 279, 307–09, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991), the Supreme Court distinguished between mere "trial error" susceptible to harmless error assessment, and errors that amounted to "structural defects" in the trial itself. A "trial error" is an error "which occurred during the presentation of the case to the jury and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission is harmless." *Id.* at 307–08, 111 S.Ct. at 1264, 113 L.Ed.2d 302. A structural error is an error that affects "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct. at 1265, 113 L.Ed.2d 302. Such errors affect the entire trial process itself, affecting the conduct of the trial from beginning to end, *see id.* at 309, 111 S.Ct. at 1265, 113 L.Ed.2d 302, and "necessarily render a trial fundamentally unfair." *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). It is because structural error is impossible to quantify that it defies analysis by the harmless error standard. The Supreme Court concluded that, when structural error is present, the "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence," thereby mandating reversal of the conviction. *Fulminante,* 499 U.S. at 307–08, 111 S.Ct. at 1265, 113 L.Ed.2d 302.

As in the *Cronic* presumed prejudice cases, *see United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court has found an error to be structural and subject to automatic reversal in a very limited number of cases. *See Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997). Moreover, in those cases where the Supreme Court, and indeed other courts, have found structural error mandating automatic reversal, the errors appear to be of constitutional magnitude. *See Duest v. Singletary,* 997 F.2d 1336, 1338 n. 3 (11th Cir.1993), *cert. denied,* 510 U.S. 1133, 114 S.Ct. 1107, 127 L.Ed.2d 418 (1994) ("Structural defects ... involve deprivations of constitutional protections so basic that in their absence no criminal trial can be deemed reliable ..."); *Lyons v. United States,* 683 A.2d 1066, 1071 (D.C.1996) (*Fulminante's* discussion of "structural defects" applied only to certain constitutional errors that were too fundamental to be harmless). Such defects include a defective reasonable doubt instruction, *see Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); racial discrimination in grand jury selection, *see Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); denial of a public trial, *see Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); total deprivation of counsel, *see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and a judge who is not impartial, *see Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

he knew that removal was a matter of right in a capital case matters not; the decision to seek removal remains a matter of trial tactics, and counsel evaluated properly the considerations in filing a suggestion of removal. In short, the State maintains that trial counsel's advice to Petitioner not to seek removal should be viewed as a reasonable professional judgment.[6] Second, the State argues lack of prejudice. Third, citing the Maryland Constitution, Art. IV, § 8(c), the State argues that Petitioner is not entitled to a new trial because, at any new trial, he would not be entitled to automatic removal as a matter of law.

II.

*The Maryland Constitutional Right, Art. IV, § 8*

Article IV, § 8(b) of the Maryland Constitution provides as follows:

In all cases of presentments or indictments for offenses that are punishable by death, on suggestion in writing under oath of either of the parties to the proceedings that the party cannot have a fair and impartial trial in the court in which the proceedings may be pending, the court shall order and direct the record of proceedings in the presentment or indictment to be transmitted to some other court having jurisdiction in such case for trial.[7]

---

**6.** We reject out of hand the State's argument that defense counsel's "blunder" in this case was trial strategy. We cannot fathom how counsel's conduct can be considered trial strategy if counsel did not know of the removal right.

**7.** In all other noncapital criminal and civil cases, the right of removal is discretionary. Article IV, § 8(c) of the Maryland Constitution states:

In all other cases of presentment or indictment, and in all suits or actions at law or issues from the Orphan's Court pending in any of the courts of law in this State which have jurisdiction over the cause or case, in addition to the suggestion in writing of either of the parties to the cause or case that the party cannot have a fair and impartial trial in the court in which the cause or case may be pending, it shall be necessary for the party making the suggestion to make it satisfactorily appear to the court that the suggestion is true, or that there is reasonable ground for the same; and thereupon the court shall order and

*See* Maryland Rule 4–254(b)(1) (implementing the constitutional provision).

■ The right of removal is absolute where the criminal offense is punishable by death. *See* MD. CONST. art. IV, § 8(b); Maryland Rule 4–254(b)(1); *Johnson v. State,* 271 Md. 189, 191, 315 A.2d 524, 526 (1974). Writing for the Court in *Johnson,* Judge Eldridge stated:

Article IV, § 8, of the Maryland Constitution gives a criminal defendant an absolute right of removal to another court if he is charged with an offense which is or may be "punishable by death." He need do no more than file in writing, under oath, a suggestion that he "cannot have a fair and impartial trial in the court" in which the case is pending. In criminal cases not punishable by death, the constitutional provision requires the defendant to go further and "make it satisfactorily appear to the Court that such suggestion is true, or that there is reasonable ground for the same."

*Johnson,* 271 Md. at 191, 315 A.2d at 526.

In *Heslop v. State,* 202 Md. 123, 126, 95 A.2d 880, 881 (1953), Judge Delaplaine traced the history of the right of removal and noted that, although the history is checkered, the right has nonetheless been considered of such significance that it has been incorporated in some form in the organic law of this State for more than a century and a half. In January 1805, the Legislature passed an Act proposing an Amendment to the Constitution of 1776 that, *inter alia,* gave courts discretion to remove criminal cases where any party suggested in writing that a fair and impartial trial could not be had in the court in

direct the record of the proceedings in the cause or case to be transmitted to some other court, having jurisdiction in the cause or case, for trial. The right of removal also shall exist on suggestion in a cause or case in which all the judges of the court may be disqualified under the provisions of this Constitution to sit. The court to which the record of proceedings in such suit or action, issue, presentment or indictment is transmitted, shall hear and determine that cause or case in the same manner as if it had been originally instituted in that Court. The General Assembly shall modify the existing law as may be necessary to regulate and give force to this provision.

which the case was pending. *See id.* at 126–27, 95 A.2d at 881. The Act was later confirmed, and a discretionary right of removal in all criminal cases became part of the Maryland Constitution. The Constitutional Convention of 1851 revised this provision by eliminating the discretionary aspect and gave the right of removal to the defendant in every criminal case. Reports of gross abuse [8] of the unlimited removal right led the Constitutional Convention of 1864 to return the power of removal to the court's discretion, and the Constitution was amended to so provide. *See* MD. CONST. art. IV, § 9 (amended 1864); *Heslop*, 202 Md. at 127–28, 95 A.2d at 882. The rule was again changed by the Constitutional Convention of 1867, removing once more the court's discretion and making the right automatic. *See* MD. CONST. art. IV, § 8 (amended 1867); *Heslop*, 202 Md. at 127–28, 95 A.2d at 882. In 1874, the Legislature, again hearing reports of abuse of the unlimited removal right, proposed an Amendment to the 1867 Constitution to provide automatic removal only in those cases where the crime was punishable by death. *See Heslop*, 202 Md. at 129, 95 A.2d at 882 (citing 1874 Maryland Laws, ch. 364). This Amendment was ratified by the Maryland voters in 1875 and reflects the current constitutional provision authorizing unlimited removal in criminal cases where the penalty may be death.

■ A review of the history of the removal provision demonstrates "a shifting concern between having a broad right of removal and having a very limited right because of the abuse associated with requests for removal." *Johnson*, 271 Md. at 194, 315 A.2d at 527–28. The current version reflects a narrow right, applicable only to those cases eligible for the death penalty. Noting that no other intent is revealed by the

---

**8.** *Heslop* points out that the automatic right of removal "had caused long postponement of trial and in addition had caused waste of time and money because the witnesses were compelled to travel to some other county seat, when actually the party who applied for the removal could have had a fair and impartial trial in the court where the case originated." *Heslop v. State*, 202 Md. 123, 127–28, 95 A.2d 880, 882 (citing Debates of the Constitutional Convention of 1864 at 1403–1405).

constitutional history, we observed that "[i]f we were to hold that the absolute, right of removal applied to certain offenses *formerly* punishable by death, we would be broadening the right, not limiting it." *Id.* at 194–95, 315 A.2d at 528 (emphasis in original).

■ The purpose of the removal provision is to provide for a method of escape from local community prejudice and to allow for a case to be tried in a different locality, free from the local community influence, bias, or prejudice that might arise in the locale in which the case originated. Today, however, the right clearly is limited to capital cases. We have stated that "there is no basis in the language of the constitutional provision relating to removal for inferring any purpose other than providing an additional procedural safeguard in a case where a criminal defendant might in fact be put to death." *Id.* at 193, 315 A.2d at 527.

■ Petitioner argues that, because his trial counsel did not file for removal of his case to another county, he is entitled to a new trial with the automatic right of removal. There is no authority for this Court, or the Circuit Court, to grant him that right. The source of the right to automatic removal, in the first instance, is the Maryland Constitution. At any subsequent trial, Petitioner could not be eligible for the death penalty.[9] As we indicated in *Johnson*, if we were to afford the

---

9. Petitioner would not be eligible for the death penalty if he were to receive a new trial. *See Harris v. State*, 312 Md. 225, 239, 539 A.2d 637, 644 (1988). Where a defendant has received a sentence less than death following a sentencing hearing, the Fifth Amendment's Double Jeopardy clause protects a defendant from retrial on the issue of punishment. *See Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981).

In *Bullington*, 451 U.S. at 446, 101 S.Ct. at 1862, 68 L.Ed.2d 270, the Supreme Court held that, once a defendant has been tried for a capital crime and, as the result of a separate sentencing proceeding that "resembles a trial on the issue of guilt or innocence," the death penalty was not imposed, a defendant may not be retried and sentenced to death. The Court reasoned that "the sentence of life imprisonment which petitioner received at his first trial meant that 'the [trier of fact] has already acquitted the defendant of whatever was necessary to impose the death sentence.'" *Id.* at 445, 101 S.Ct. at 1861, 68 L.Ed.2d

unlimited right of removal in the instant case, where the death penalty was only formerly available, we would be broadening the right, something we are without the authority to do. *See id.* at 194–95, 315 A.2d at 528.

## III.

### *Ineffective Assistance of Counsel*

■ In order to assess the adequacy of counsel's representation under the Sixth Amendment, we apply the standards enunciated by the Supreme Count in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[10] *See Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Wiggins v. State*, 352 Md. 580, 724 A.2d 1 (1999),

---

270 (citation omitted). Once the State has failed to justify the death penalty in its " 'opportunity to offer whatever proof it could assemble, the State is not entitled to another.' " *Id.* at 446, 101 S.Ct. at 1862, 68 L.Ed.2d 270 (internal citation omitted). To allow the State to seek the death penalty a second time would violate the Double Jeopardy clause of the Fifth Amendment. *See id.*

This Court recognized, in *Harris*, 312 Md. at 239, 539 A.2d at 644, that Maryland's capital sentencing procedure, like the sentencing procedure in *Bullington*, affords a defendant protections characteristic of a criminal trial. It includes the presentation of evidence and the opportunity for rebuttal and aggravating and mitigating factors must be proven beyond a reasonable doubt. *See* Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.) Art. 27, § 413.

**10.** The dissent takes issue with the Court's application of the *Strickland* analysis. See dissenting op. at 317, 768 A.2d at 666 (stating "*Strickland* should not be the be all and end all of constitutional interpretation, even in a post-conviction context"). Whether the dissent likes it or not, the United States Supreme Court has made it patently clear that the *Strickland* analysis controls in assessing whether, *under the Sixth Amendment,* effective assistance of counsel has been denied. *See, e.g., Williams v. Taylor*, 529 U.S. 362, 393, 120 S.Ct. 1495, 1513, 146 L.Ed.2d 389 (2000) (noting that "[c]ases such as *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), and *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), do not justify a departure from a straightforward application of *Strickland* when the ineffectiveness of counsel *does* deprive the defendant of a substantive or procedural right to which the law entitles him").

Moreover, even if we were to analyze the claim under Article 21 of the Maryland Declaration of Rights, our analysis would not be any different.

*cert denied,* 528 U.S. 832, 120 S.Ct. 90, 145 L.Ed.2d 76 (1999); *Oken v. State,* 343 Md. 256, 681 A.2d 30 (1996), *cert. denied,* 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997); *Bowers v. State,* 320 Md. 416, 578 A.2d 734 (1990). As the Supreme Court enunciated, to establish a claim of ineffective assistance of counsel, Petitioner must prove "that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense, which requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams,* 529 U.S. at 391, 120 S.Ct. at 1511–12, 146 L.Ed.2d 389. *See Bowers,* 320 Md. at 427, 578 A.2d at 739 (holding that, to establish prejudice, Petitioner must show that there is a substantial possibility that the result would have been different). Thus, the inquiry has two foci: first, a performance evaluation under prevailing professional norms; and second, an inquiry into whether the defendant suffered prejudice as a result of deficient performance. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams,* 529 U.S. at 393 n. 17, 120 S.Ct. at 1513 n. 17, 146 L.Ed.2d 389.

■ We agree with the post-conviction court's conclusion that trial counsel's performance was substandard. Redman's trial counsel admitted that he was unaware of the Maryland constitutional right of automatic removal in capital cases. Failure to inform Redman of this right was deficient performance of his duties as counsel.

■ This conclusion leads us to the second question: whether the deficient performance prejudiced Petitioner. To establish prejudice, Petitioner must show that there is a substantial possibility that, but for counsel's unprofessional error, the result would have been different. *See Bowers,* 320 Md. at 427, 578 A.2d at 739.

■ We address first Petitioner's argument that prejudice should be presumed. The Supreme Court fashioned an excep-

tion to the *Strickland* prejudice prong in *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984), reasoning that "there are circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." The *Cronic* Court, actually in dicta, stated that in rare circumstances, prejudice might be presumed "without inquiry into counsel's actual performance at trial." *Id.* at 662, 104 S.Ct. at 2048, 80 L.Ed.2d 657. The Supreme Court noted:

> Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.

*Id.* at 659–60, 104 S.Ct. at 2047, 80 L.Ed.2d 657. Thus, the Court carved out a narrow exception to the general rule that in ineffective assistance of counsel cases under the Sixth Amendment, a defendant must prove that he or she was prejudiced by counsel's deficient performance.

In considering the presumed prejudice exception of *Cronic*, the United States Court of Appeals for the First Circuit said the following:

> But, the approach suggested in this statement is in all events the exception, not the rule—and it can be employed only if the *record* reveals presumptively prejudicial circumstances such as an outright denial of counsel, a denial of the right to effective cross-examination, or a complete failure to subject the prosecution's case to adversarial testing. The *Cronic* Court itself warned that, in most cases a showing of actual prejudice remained a necessary element. The Court stated: "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."

*Scarpa v. DuBois*, 38 F.3d 1, 12 (1st Cir.1994) (citation omitted). In rejecting an expansive reading of the *Cronic* language, the *Scarpa* court interpreted the exception as follows:

In our view, the Court's language in *Cronic* was driven by the recognition that certain types of conduct are *in general* so antithetic to effective assistance—for example, lawyers who leave the courtroom for long stretches of time during trial are unlikely to be stellar advocates in any matter—that a case-by-case analysis simply is not worth the cost of protracted litigation. No matter what the facts of a given case may be, this sort of conduct will almost always result in prejudice. But attorney errors particular to the facts of an individual case are qualitatively different. Virtually by definition, such errors "cannot be classified according to likelihood of causing prejudice" or "defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid." Consequently, the Court has declined to accord presumptively prejudicial status to them.

*Id.* at 12–13 (citations omitted).

Other courts have been very cautious in presuming prejudice and require a showing of actual prejudice in most cases. *See, e.g., United States v. Thompson,* 27 F.3d 671, 676 (D.C.Cir.1994), *cert. denied,* 513 U.S. 1050, 115 S.Ct. 650, 130 L.Ed.2d 554 (1994); *United States v. Baldwin,* 987 F.2d 1432, 1437–38 (9th Cir.1993), *cert. denied,* 508 U.S. 967, 113 S.Ct. 2948, 124 L.Ed.2d 696 (1993); *McInerney v. Puckett,* 919 F.2d 350, 352–53 (5th Cir.1990); *United States v. Reiter,* 897 F.2d 639, 644–45 (2d Cir.1990), *cert. denied,* 498 U.S. 817, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990); *Henderson v. Thieret,* 859 F.2d 492, 499–500 (7th Cir.1988), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). Courts have applied the *Cronic* presumed prejudice exception in cases where no attorney appeared, *see United States v. Mateo,* 950 F.2d 44, 48–50 (1st Cir.1991); where defense counsel sat mute throughout the entire re-sentencing proceeding, *see Tucker v. Day,* 969 F.2d 155, 159 (5th Cir.1992); and where defense counsel was absent from the courtroom during a critical stage of the trial, *see Green v. Arn,* 809 F.2d 1257, 1259–64 (6th Cir.1987), *vacated,* 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987), *reinstated,*

839 F.2d 300 (1988), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 979 (1989) (holding that absence of defense counsel during cross-examination of key government witness by attorney for a codefendant was presumptively prejudicial). Proof of actual prejudice "is … required where the fundamental fairness of the challenged proceeding has not been affected and the integrity of the legal process has not been jeopardized." *United States v. Swanson,* 943 F.2d 1070, 1073 (9th Cir.1991).

Counsel's error in this case is not the type in which prejudice will be presumed. As we have explained, the Maryland constitutional right of automatic removal is triggered by filing a suggestion of removal by either the State or the defendant. Ordinarily, a capital defendant will discuss the right with counsel and decide whether to file a suggestion of removal, in writing, under oath stating that he or she "cannot have a fair and impartial trial in the court" in which the case is pending. MD. CONST. art. IV, § 8(b). Neither party is required to exercise the right.[11] Thus, trial counsel's failure to inform Petitioner of his constitutional right to automatic removal, without more, does not *necessarily* render the resulting criminal trial fundamentally unfair or unreliable. Unlike counsel's absence during a critical part of the trial or counsel remaining silent throughout the trial, failing to remove a trial is not a circumstance "so likely to prejudice the accused that the cost of litigating [its] effect in a particular case is unjustified." *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046, 80 L.Ed.2d 657. If it were otherwise, the right of removal would not be optional.

*Strickland* requires an inquiry into the existence of actual prejudice. Petitioner must show that " 'that there is a substantial possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Perry v. State,* 357 Md. 37, 80, 741 A.2d 1162, 1185 (1999) (quoting *Oken v. State,* 343 Md. 256, 284, 681 A.2d 30, 44

---

**11.** Had Petitioner received the death penalty, he would have been deprived of an added procedural protection entitling him to a new trial with the automatic right of removal. This is not such a case.

(1996)). *See Bowers v. State,* 320 Md. 416, 425–27, 578 A.2d 734, 738–39 (1990).

 The Court of Special Appeals, in considering the prejudice prong of *Strickland,* concluded that Respondent failed to shoulder his burden to establish prejudice. Writing for a divided panel, Chief Judge Joseph F. Murphy, Jr. explained:

> In this case, if (1) the State had not sought the death penalty in the first place, and (2) appellee's right of removal would therefore have been controlled by Maryland Rule 4–254(b)(2), the considered recommendation against filing a suggestion of removal would not have been deficient in any way, because the "cost/benefit" analysis undertaken by appellee's counsel was well within the range of competent professional judgment in a non-capital case. Because appellee was not sentenced to death, it is clear that this is a case in which the "outcome determination" test favors the State rather than the petitioner. Prejudice is therefore lacking as a matter of law. (footnotes omitted).

We agree.

We hold that Petitioner has not satisfied the prejudice prong of the *Strickland* analysis. He has not met his burden to establish that, but for counsel's error, there is a substantial possibility that the outcome of the trial would have been different. Petitioner did not receive the death penalty; his lawyer considered the costs and benefits of removal, and his lawyer conducted a professional and extensive voir dire examination of the jurors. He was satisfied, after jury selection, that an impartial jury had been impaneled. The record is devoid of any evidence suggesting that Petitioner was denied a fair trial in Allegany County. In sum, Petitioner simply has adduced *no* evidence that the proceeding was fundamentally unfair or unreliable.

We also need to focus on the purpose of the Maryland Constitutional right.[12] As we have pointed out, it is to provide

---

12. The dissent is premised upon a belief that Petitioner was denied a right guaranteed by the Maryland Constitution. See dissenting op. at

an *additional procedural safeguard* in a case where a criminal defendant might in fact be put to death. Because death is indeed different, courts have provided many additional or heightened procedural safeguards in capital cases.

The case of *Rembert v. Dugger*, 842 F.2d 301 (11th Cir. 1988), *cert. denied*, 488 U.S. 969, 109 S.Ct. 500, 102 L.Ed.2d 536 (1988), is instructive. In a death penalty proceeding, Rembert was charged with first degree murder and attempted armed robbery. Three times during the jury trial, Rembert attempted to waive the statute of limitations for the lesser included offenses of the first degree murder charge. Under Florida law, in a first degree murder case, the jury must be instructed on the lesser offense of second degree murder, except where the statute of limitations has run on the lesser offense. *Id.* at 302 n. 2 The trial court would not accept the waiver and refused to instruct the jury on the lesser charges because they were barred by the applicable statute of limitations.

Rembert was convicted of first degree felony murder, with a recommendation of a life sentence, which the judge imposed. Rembert sought *habeas corpus* relief in the United States District Court for the Northern District of Florida. The district court denied relief and the United States Court of Appeals for the Eleventh Circuit affirmed. *See id.* at 301. The court held that the trial court erred in not accepting Rembert's waiver of the statute of limitations. *Id.* at 303. The court pointed out that, notwithstanding the state law on the effectiveness of waiver, the "right to lesser included offense instructions in *capital cases* is, however, a matter of

---

317, 768 A.2d at 666. This is not so. Inasmuch as Petitioner never requested removal of his case, he was not denied a right under the Maryland Constitution. The only question Petitioner raised before this Court is whether he was denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution.

If Petitioner had asked for and had been denied his right of removal, our analysis would be different. The case would then be in the posture of an Article IV, § 8 violation, and Maryland constitutional law would apply, not the law of effective assistance of counsel.

federal constitutional law." *Id.* at 302 (citing *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)) (emphasis added). Although in this death penalty case, the jury had before it two options death or life imprisonment it "did not have before it the 'third option' of convicting and sentencing Rembert for a lesser included offense of first degree murder." *Id.* at 303 (quoting *Beck,* 447 U.S. at 637, 100 S.Ct. at 2389, 65 L.Ed.2d 392).

Concluding that the case was no longer a capital case, however, the court affirmed, denying Rembert a new trial. The court reasoned as follows:

> The constitutional violation must, however, be assessed in light of the trial court's imposition of a life sentence. When Rembert received a life sentence, the concern that gave rise to the right was eliminated. The danger of an unwarranted death sentence ended when Rembert was given life. The constitutional error by the state trial judge in this case in failing to instruct the jury concerning lesser included offenses was rendered harmless by the jury's imposition of a life sentence.

*Id.* (footnote omitted).

Similarly, in the instant case, the error must be assessed in light of the life sentence imposed and the purpose of the right at issue. This case is no longer a capital case, and at any retrial, were we to order one, Petitioner would not be entitled to the heightened procedural protections of a capital case. He would not be entitled to the benefit of the automatic right of removal but would be subject to the discretionary provision. Consequently, one more fair trial would not revive the lost chance.

We hold that the trial court was clearly erroneous in granting Petitioner post-conviction relief. Petitioner is not entitled to a new trial.

### JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.

Dissenting opinion by CATHELL, J., in which BELL, C.J., joins in.

CATHELL, Judge, dissenting.

I respectfully dissent. The majority, in my view, misconstrues the purpose of the Maryland constitutional automatic right of removal in death penalty cases. Much of what the majority says, is, as I view it, not relevant to the issue we should resolve. I perceive the right of removal in a death penalty case to be a paramount, if not fundamental, right of a defendant. The right of removal is addressed at insuring a fair and impartial trial of the facts, and its denial is an inappropriate denial of a fair trial because the constitutional right, in my view, assumes the existence of prejudice in its violation. Had Redman's counsel requested such a removal, and the trial court denied it, and the issue been presented on direct appeal, I have no doubt we would have found the right to be sufficiently fundamental to constitute prejudice in and of itself. However, the primary function of the majority's position, it appears to me, is to use the second prong of *Strickland*, in a post-conviction context, to require petitioner to prove prejudice, and, in doing so, the majority eliminates a right guaranteed by the Maryland Constitution. The fact that in the case at bar petitioner did not receive a death sentence, does not change the impact of his counsel's incompetence, in respect to whether he had a fair trial as to guilt or innocence. He was entitled to have his trial in any jurisdiction other than the one where it was held. An over-rigid compartmentalization of this case into a pure *Strickland* analysis, cannot hide the fact that he has been denied a constitutional right to which he was entitled. The majority, in essence, holds that because he did not receive the penalty of death, it is relatively immaterial whether he was denied a fair trial as to guilt or innocence by a jury that may have been influenced by the publicity surrounding the case, or by its racial aspects.

The majority, relying, in part, on federal circuit cases addressing other issues, makes the subsequent imposition, or non-imposition of the death penalty, when considering the matter of removal in a post conviction proceeding, one of the determinative factors when a person, through the incompetence of his own counsel (or otherwise, given the reasoning

of the majority), is denied the automatic right of removal guaranteed by the Maryland Constitution. The majority's position is, thus, result-driven. You can deny a constitutional right if life is imposed, but you cannot deny the same constitutional right if death is imposed. The majority minimizes the fact that the right is designed to afford a fair trial in cases that qualify for the death penalty. The majority does so by holding, basically, that when death is not ultimately imposed, there is insufficient prejudice. I believe that the adverse publicity, community passions, biases, and prejudices, the right was created to combat, apply equally, if not more so, to the guilt/innocence phase of the trial.

The majority, hiding behind the prejudice prong of *Strickland*, utterly fails to address the prejudice to petitioner if he is innocent of the offense, and was only convicted because he was forced to stand trial before a jury affected by bias. If the intensity of the focus of the majority's position was directed to the guilt/innocence stage of the trial, the majority's reasoning would, I suggest, mandate a reversal of the Court of Special Appeals, and the reinstatement of the trial court's granting of a new trial for petitioner.

The majority, in its conclusion states: "Similarly, in the instant case, *the error must be assessed in light of the sentence* and the purpose of the right at issue." (Emphasis added.) This case is no longer a capital case and at any retrial, were we to order one, petitioner would not be entitled to the heightened procedural protections of a capital case. He would not be entitled to the benefit of the automatic right of removal but he would, however, have the right to request removal, if he still deemed it necessary, under the discretionary removal provisions. Consequently, a new fair trial would now satisfy the constitutional provisions.

Whether petitioner receives a sentence of death has no bearing, and can have no bearing, on whether he has been prejudiced by being denied a fair trial on the matter of guilt or innocence through his counsel's failure to inform him of his automatic right to remove the case. The majority is quick to

assume he has had a fair trial even though in violation of a fundamental constitutional right, but holds petitioner to the impossible burden of, years later, proving that the denial of his fundamental rights denied him a fair trial. The majority's assumption is convenient for its result-driven reasoning. But, when all is said and done, the defendant will serve a life sentence as a result of being convicted by a jury that the defendant had an absolute constitutional right to avoid. Except for the engrafting of an immutable *Strickland* standard to this case, even the majority would, I believe, grant appellant a new trial. *Strickland* should not be the be all and end all of constitutional interpretation, even in a post-conviction context. Moreover, if petitioner is innocent, a factor that the majority does not sufficiently contemplate, a life sentence prejudices him just as clearly as does a sentence of death. Even the prejudice prong of the *Strickland* analysis, is not limited to the manner and type of sentence.

It is my view that the purpose of the automatic removal provisions of the Maryland Constitution is to address potential bias in cases of an especially heinous nature that often qualify for the death penalty. Because of the nature of such offenses, and their potential consequences, the Constitution affords to a defendant a right to be tried, especially as to guilt or innocence, in a jurisdiction in which he or she can receive a fair trial. It is designed to safeguard against a defendant being tried in a venue in which local emotions (which are often stronger in certain types of murder cases that often qualify for the death penalty) would generally run higher and might, thus, improperly influence the trial jury as to guilt or innocence. Had the constitutional framers been concerned only with sentencing, they could have directed that sentencing be before a judge in another jurisdiction, rather than provide for the entire trial to be automatically removable upon request.

At the time of the last constitutional amendment, the determination of whether a death penalty would be imposed did not even involve the jury. Sentences, even in death penalty cases, were generally determined by judges. The framers expressly provided for, and clearly intended, that, upon request of either

party, the entire trial be removed from the effect that local passions and biases might have upon a local *jury.* Even the majority notes:

> The purpose of the removal provision is to provide for a method of escape from local community prejudice and to allow for a case to be tried in a different locality, free from the local community influence, bias or prejudice that might arise in the locale in which the case originated.

The majority, incongruously agrees with the purpose, but declines to apply it. It is the majority's position that Redman was not prejudiced because he did not receive the death penalty. In adopting such a position, the majority, in my view, pays insufficient deference to the purpose of the framers, which was to guarantee a complete trial, free from local biases, especially including the only phase that then involved a jury, the guilt or innocence phase. Article IV, section 8 was not designed solely to protect against the unfair imposition of a sentence.

Judges, at the time of the constitutional amendments at issue in the case *sub judice,* imposed sentences, including death sentences. Then, as now, judges were presumed to be able to perform their functions free of bias and prejudice. We have held, as I shall indicate, that a party, then and now, never had the automatic right to require the removal of the sentencing authority—they never had the right in respect to the person who, at the time of the enactment of the constitutional provisions, imposed sentence. At all times when it was created and recreated, the constitutional right of removal, of necessity, was directed at the trier of facts stage, not only at the penalty stage or penalty proceedings.

We have long held that the purpose of the provision was to avoid prejudices that might influence juries. At that time the jury's only function was to determine guilt or innocence. In a very early case involving the general removal provisions then extant, the Court described the purpose of the removal provisions, saying in part:

Thus to enable the party accused to make his *defence before a different jury from that to which it must have been submitted without this provision, and before a jury summoned by a different officer.* The right of removal from one county to another to obtain a fair and impartial trial, where life, liberty and fame, may be endangered, *is a great and inestimable privilege. It is one of the most prominent and valuable features in the judiciary system,* and, as before observed, was intended to be as permanent as any other part of the Constitution. . . .

. . . .

. . . The evil complained of, and to be remedied, was, that a party accused was compelled to try the *prosecution* against him in the County Court in which the presentment was found, although he was satisfied he could not there have a fair trial, from prejudice that might extend over the whole county, or be entertained by the sheriff who returned the jury for that county. The constitutional remedy was to remove the trial to another county, where it was to be presumed those prejudices did not exist, but which would, at all events, secure the party a *trial before a jury summoned by a different officer* . . . .

. . . The Constitution declares that the party accused shall have a *right of trial before a jury, composed of men from a different county, and summoned by a different sheriff.* . . .

*State v. Dashiell,* 6 H. & J. 268, 269–72 (1823) (emphasis added).

In the first case that I have found, decided after the ratification in 1875 of the last constitutional amendment (which, in addition to providing for the automatic right of removal in capital cases, also contained provisions relating to the removal of civil cases) we, citing *Dashiell,* reiterated the general purposes of removal provisions. *Hoyer v. Colton,* 43 Md. 421, decided in January of 1876 involved an attempt by the Legislature to condition the exercise of the right of removal upon the payment of certain sums. We said then:

Then again, if the Legislature has the power to prescribe such conditions in the removal of civil cases, it has the same power in criminal prosecutions, and thus a prisoner upon his trial for a capital offense, might be deprived of the right to remove his case, although willing to make the oath prescribed by the Constitution, and even although the court might be satisfied that owing to the existence of some local feeling and prejudice, the ends of justice required that the case should be tried in another county.

We can hardly believe that the framers of the Constitution, who considered this right so valuable to the citizen, and so essential to the impartial administration of justice, as to make the exercise of it in every case depend upon the mere suggestion and affidavit of the party, ever intended to confer upon the Legislature the power to hamper its exercise with conditions that might defeat the right itself.

*Id.* at 424.

We reiterated much later that the emphasis was on the trial stage, especially on jury trials, in the civil case of *Greenberg v. Dunn,* 245 Md. 651, 654–655, 227 A.2d 242, 243–44 (1967). In *Greenberg,* we initially noted 2 Poe, *Practice* (Tiffany Ed.) Section 93, where Poe concluded that the right of removal was "wholly directed to jury trials." *Id.* at 654, 227 A.2d at 244. While we disagreed that it was limited to juries, holding that it also applied to trials before judges, we commented on the case [1] upon which Poe based his position, and focused instead on the trying of fact stage of proceedings, whether before a jury or a judge, saying, in relevant part:

Judge Miller, for the Court, suggested that it should not be assumed that the people would elect judges so unfit or prejudiced as to be unable to render fair and impartial judgments in cases where they are not connected with the parties or otherwise personally interested. . . . Judge Miller continued:

---

1. *Cooke v. Cooke,* 41 Md. 362 (1875).

"But still further, not only is there no language in the clause which plainly directs it to prejudice in the judges, but, looking to the origin of the right or power, we find it *directed wholly to jury trials,* and this, we think, has never been lost sight of or departed from in any of the constitutional or legislative provisions on the subject. The object was to get rid of the influence of local prejudice in the community from which the jury to try the case was to come, and thus, as far as practicable, to secure a fair and impartial trial by jury."

*Id.* at 654–55, 227 A.2d at 244 (emphasis added) (citation omitted).

We have reinforced the emphasis on the function of the protection afforded, by noting that it was to help provide fair and unbiased juries. We have done so by holding that while a defendant has a right to have his case removed to another county, he has no right to have his case removed from being presided over by the same judge who would have tried the case in the originating county. In *Johnson v. State,* 258 Md. 597, 267 A.2d 152 (1970), a case was removed from one county in a circuit to another county in the same circuit. The trial judge, who would have held the trial in the originating county, tried the case in a court trial in the new county. When Johnson learned that his trial in the new county was going to be tried before the same judge (Judge P. Bowen) who would have presided in the originating county, he "vehemently and strenuously objected." *Id.* at 598, 267 A.2d at 153. Judge Bowen found Johnson guilty and sentenced him to death. One question presented to the Court was whether Art. IV, Section 8 of the Maryland Constitution, gave the defendant the absolute right to have his case tried before a different judge. There we cited once again our old holding in *Dashiell,* that the purpose of the right was to "enable the party accused to *make his defence before a different jury* . . . and before a jury summoned by a different officer." *Id.* at 601, 267 A.2d at 154. We cited *Cooke,* quoting, in part that "[t ] *he object was to get rid of the influence of local prejudice in the community from which the jury to try the case was to come.* . . ." *Id.* at 602,

267 A.2d at 154. We then cited *Chappell Chemical & Fertilizer Co. v. Sulphur Mines Co.*, 85 Md. 684 (identifying it as an unreported case), 36 A. 712 (1897), *aff'd*, 172 U.S. 474, 19 S.Ct. 268, 43 L.Ed. 520 (1899), and quoted from it that: "The intent and purpose of the constitutional provision for the removal of causes was to avoid any prejudice which might affect a jury." *Johnson*, 258 Md. at 602, 267 A.2d at 154.

The importance of the cases I have cited above, must be viewed in terms of the times in which they were decided. All of the early cases were decided at a time when most, if not all, sentences, even in death penalty cases, were decided by judges, not by juries. The right of removal was not directed at sentencing authorities. The right of removal in capital cases was designed to ensure fair and impartial trials, as to guilt or innocence, before juries free of the potential for bias and prejudice that could contaminate a jury in the county where the crime occurred. The right is to ensure a fair jury trial on the matter of guilt or innocence. The fact that the case is a capital case, merely makes the right of removal automatic, it does not limit the applicability of the right by the sentence imposed. The majority's reasoning that if the death penalty is not imposed, you have not been denied the constitutional right, have not been denied a fair trial, and have not been prejudiced, belies the fundamental nature with which this Court has always attributed Article IV, Section 8 of the Maryland Constitution.

The majority states that the Court has no power, even if it were to remand the case for trial to direct that it be removed to another county, because the petitioner no longer may be subjected to the death penalty.[2] The majority states that if we attempted to cause a removal in the subsequent case "we would be broadening the right, something we are without the authority to do." While we do not have the authority to direct

---

**2.** *See Harris v. State*, 312 Md. 225, 238–39, 539 A.2d 637, 643–44 (1988) (stating that on remand, the penalty cannot exceed that to which a defendant was sentenced in the original trial).

an automatic right of removal on remand, we can direct that he now have a fair trial under present circumstances because he did not have a fair trial under the former circumstances. The denial of a fair trial in the first instance is prejudice, I would suggest, warranting a new trial with whatever removal provisions that exist at the time of such a new trial.

Again, I believe the majority misconstrues the status of the issue before us. The primary, and determinative issue is, or should be, whether petitioner was forced by the actions or inactions of his counsel, who the majority concedes was incompetent at least as to this issue, to be tried in a jurisdiction where he believed he could not get a fair trial as to guilt or innocence from the local jury, when, in fact he had an automatic constitutional right not to be tried or sentenced in that county. It is not now our function to deny him the new trial he seeks, on the grounds that we also lack the power to cause the trial to be automatically removed, as he states he originally wanted. The issue, fairly framed, is not whether we can now give him what he formerly had an automatic right to, but whether his constitutional right to a fair trial was denied, due to the incompetency of counsel in respect to petitioner's rights of removal and whether he is now entitled to what the Constitution now requires, a trial where he has the right to seek discretionary removal. Petitioner's constitutional right to an automatic removal was denied him, through the incompetence of his counsel, before he was sentenced to life, a sentence the majority now relies on to, retroactively, deny him the right, under a *Strickland* analysis. But, at any new trial we would grant, petitioner would still have a constitutional right to request the lower court to remove his case for trial, and the trial court would have the discretion to do so, depending upon the circumstances at that time.

More important, petitioner's counsel declined to request what he believed to be a discretionary removal because of the very fear the automatic right of removal was intended to address—adverse publicity. A fear which, because of petitioner's automatic constitutional right, was baseless in the first instance. The record reflects that petitioner's counsel, not

realizing that petitioner had an automatic right of removal, based his strategic decision not to seek a discretionary removal, at least in part, on his belief that the very seeking of the removal, which he felt might be denied, would itself create additional publicity in that county, which, if the removal was denied, could be adverse to the interests of petitioner. That admission, alone, of the fear of local bias at the time of the original trial, is sufficient in this constitutional context to evidence the possibility of prejudice. Defense counsel was so fearful of being denied a fair and unbiased jury for defendant if a request for removal was made, he did not make such a request. To me, that is evidence of local prejudice sufficient, in and of itself, to meet even the second prong of *Strickland.*

No adverse risks to petitioner existed had he sought a removal, as the post conviction trial court found he did. In my view, even under a *Strickland* analysis, that constituted actual prejudice to petitioner, even if prejudice is not assumed when a petitioner is, for whatever reason, effectively denied his constitutional right to an automatic removal. With the majority's position, petitioner finds himself having been possibly denied a fair trial because he was denied a constitutional right to protect himself against untoward publicity—because his counsel was unjustifiably fearful of publicity. And the majority ratifies what has happened, not because it finds, or even could find, that he had a fair trial on guilt or innocence, but because he did not receive the death penalty and cannot now proffer some new evidence of prejudice. Such an interpretation of the constitutional right, in my opinion, is simply wrong.

Additionally, in an extensive footnote, the majority perfunctorily dismisses the concept of structural error, saying that petitioner is inappropriately scrambling "the eggs of *Arizona v. Fulminante. Fulminante* is a refinement of the federal harmless-error analysis; *Strickland* is an evaluation of performance and an assessment of prejudice." The majority thus dismisses anything other than its hidebound devotion to a *Strickland* analysis. This Court's utilization of *Strickland* principles, in my view, goes too far. *Strickland* did not

supplant the Federal and State Constitutions. They survive *Strickland.* The overindulgence in *Strickland* principles in the manner of the majority in this case, is to assess constitutional rights and principles primarily on the basis of ultimate results. That might be appropriate for evidentiary issues, even for issues as to instructions, matters that occur within trials themselves, but as to basic rights, such as the basic constitutional right not to be tried in a forum potentially biased by local publicity and local feelings, it is not, I suggest, the right course.

With the position the majority takes today, trial judges may well feel that they can deny the automatic removal in qualifying cases, and after verdict and sentencing, on motion, deny a new trial in cases where a defendant is not sentenced to death, and grant the motion for a new trial, and then remove the case, where a defendant is sentenced to death. While one supposes, and hopes, that trial judges will pay more deference to the constitutional requirement than does the majority, they need not under its view. What is sauce for the appellate goose may well be sauce for the trial court gander.

As I see it, the constitutional right of a death penalty defendant not to be tried in a particular county is not a trial event. It precedes trial, and, the improper denial of such a right, through defense counsel's incompetence, or otherwise, is a structural defect predating the trial itself; it affects the "framework within which the trial proceeds, rather than simply an error in the trial process itself."

The majority proffers several examples of "structural error": defective reasonable doubt instructions, racial discrimination in grand jury compositions, denial of a public trial, total deprivation of counsel, an impartial judge, but holds that the deprivation of an absolute constitutional right to be tried in another county, in order to avoid the possibility of an impartial jury, is not structural error. I cannot agree. In modern cyber language, it simply does not compute. In another portion of its opinion, the majority cites a case where structural error was found and prejudice presumed where counsel was

absent from the courtroom during a critical stage of the proceedings. In the present case, the assistance of counsel was effectively absent, through ignorance, during a critical stage, the removal period of the trial. Yet, the majority treats this case differently.

At another point, the majority states failure to remove a case is not "so likely to prejudice the defendant.... If it were otherwise, the right of removal would not be optional." Such a statement is simply unsupported in law or logic. "Otherwise" is actually prevalent in constitutional law. The constitutional right to a jury trial, to have an attorney represent you, to a speedy trial, and to many, if not all, constitutional rights, are optional or waivable rights. The majority's position on this "otherwise" point is completely unsupportable. I do not believe the majority's position would be the same if a defendant was improperly denied the right to a jury trial or to counsel, even if the majority determined that a later sentencing was "advantageous."

In other words the majority is holding that the fairness of a trial, the fair trial to which a defendant is entitled, depends, in a death penalty post-conviction context, primarily upon the sentence which he receives. In my view that is logically indefensible in any context. The constitutional right affords to a person who *might* be sentenced to death (not just who is eventually sentenced to death) the automatic right, upon request, to be tried, including the right to be tried as to guilt or innocence, in another county. It is, as I see it, structural.

In my view the Maryland Constitution's two level removal scheme requires a non-capital criminal defendant to establish potential improper prejudice in a particular jurisdiction, and, if the suggestion of removal is denied, would thereafter, on appeal, require a defendant to establish that his trial on guilt or innocence was unfairly influenced by publicity, etc. The majority, in respect to a defendant who had an automatic right to removal at the time of his trial, with its decision today either requires such a defendant to bear the same burden on

appeal, or, rejects any right to do so in the first instance if he is not sentenced to death. It is simply illogical.

In death penalty cases, as I view the constitutional removal provisions in their entirety, it is not required for a death penalty defendant to establish or prove any potential or actual prejudice either before trial or at trial, or on appeal after a conviction, or in post-conviction proceedings, as the majority now requires. The constitutional arrangement, especially when the more contemporaneous, older cases are considered, contemplates that, for removal purposes, prejudice in death penalty cases at the trial stage is to be assumed. The right is, therefore, structural. It relates to the framework of the trial—where it will be tried. Otherwise, why would the framers have created the automatic right in the first instance? The right to establish the potential for prejudice and seek removal at the discretion of the trial court, is available in the other prong of the Constitution's removal provisions.

With the majority's holding, prejudice, in respect to the denial of an automatic right to remove a case, depends, in important part, on factors subsequent to the trial phase, *i.e.*, the actual imposition of a death sentence, in order for there to be prejudice at the trial phase. This result-driven analysis simply makes no sense in any context, even in post-conviction proceedings.

The decision of the Court, if carried to its illogical conclusion, has the potential to judicially do away with a right guaranteed by the Maryland Constitution. If, in death penalty cases, where a defendant is denied (through counsel incompetence or otherwise) his constitutional right to removal at the trial level, and prejudice is not assumed, then the right can be initially ignored and so long as death is not actually imposed, the right can be completely ignored.

The majority, irrespective of its stated concerns about fairness at the trial stage, basically limits its consideration to whether the petitioner received the death penalty, when the appropriate framework for the constitutional analysis includes whether the jury forced on him by the incompetence(at least

in this area)of his counsel was improperly prejudiced against him by local passions and publicity, in the rendering of its verdicts. Where an automatic constitutional right exists, a denial, I would respectfully suggest, is structural error and assumes prejudice. In such instances, the defendant should not have to establish prejudice. The establishment of prejudice is an impossibility, I would suggest—in the circumstances here present. With the Court's holding today, a defendant in a death penalty case, can be forced to be tried in a county where he believes a jury will be unfair in rendering its verdict, and where the jury is improperly biased and prejudiced, and if the judge or jury does not ultimately sentence him to death, he receives no relief, but if he is sentenced to death he is prejudiced and must be retried.

The majority notes: "Trial counsel's failure ... does not necessarily render the resulting criminal trial fundamentally unfair or unreliable." The statement ignores what actually occurred in this case. Petitioner's counsel recommended to, or decided for, petitioner, that he should not seek to have the case removed, because if the trial court declined to remove it, the very attempt to remove the case might generate further adverse publicity. The majority concedes that counsel was incompetent, but, fails to see that counsel's incompetence, led to an irrational fear that additional prejudice might result from an attempt to remove. In the process, counsel's negligence and incompetence led to a denial of petitioner's constitutional rights.

*Johnson v. State,* 271 Md. 189, 315 A.2d 524 (1974),[3] a Maryland case relied on by the majority, arrived at this Court, and the lower courts, at a significantly different time, and in a very different posture. It, in my view, supplies little authority for the position taken by the majority.

First, in that case, Johnson was facing rape and assault charges, not murder charges. The statute then provided that

---

**3.** Hereafter, when I refer to *Johnson,* I am referring to this *Johnson* case, not the one found in 258 Md. 597, 267 A.2d 152.

death was a possible penalty upon a rape conviction. However-er, at the time the removal issue was before the trial court, the death penalty for rape cases had been declared unconstitution-al by this Court. Johnson, after the trial court denied his suggestion for removal directed to the court's discretion, argued that he was entitled to an automatic right of removal by reason of the constitutional provisions relating to the same in death penalty cases, even though the death penalty had been ruled unconstitutional in rape cases, because the statute still contained death penalty provisions, or that it formerly contained them. The lower court held that because the death penalty, by the time of Johnson's trial, had been held unconsti-tutional, he could not be subjected to it even if he was convicted at trial. At that point, Johnson had been neither tried nor sentenced.

An immediate appeal was taken to the Court of Special Appeals. It agreed with the trial court. We then granted certiorari. Our holding was, essentially, that, *where, prior to, or at the time of trial,* a person is not subject to the death penalty if convicted, then he is not covered by the constitution-al provision relating to automatic removals.

In the case *sub judice,* the majority, quoting *Johnson,* 271 Md. at 193, 315 A.2d at 527, says: "[T]here is no basis in the language of the constitutional provision relating to removal for inferring any purpose other than providing an additional pro-cedural safeguard in a case where a criminal defendant might in fact be put to death." I respectfully disagree with the majority's interpretation and application of *Johnson* to the facts of the case at bar. First, *Johnson* was completely factually and procedurally dissimilar. Second, the *Johnson* Court, when it made that statement, was responding to John-son's theory that the purpose of Art. IV, Section 8, was to authorize the death penalty and to classify crimes for proce-dural purposes such as the right of removal or the right to bail, and therefore the automatic right of removal should survive the impact of the declared unconstitutionality of cer-tain death penalty provisions relating to crimes such as rape, for which he could no longer be sentenced to death.

This Court rejected Johnson's theory. The purpose of the statement relied on by the majority in this case, was to hold that the procedural aspect of the constitutional provision only applied where a defendant "might in fact be put [sentenced] to death" at the time of trial. The Court was not saying that the constitutional provision did not apply where a defendant at trial *might* constitutionally be sentenced to death, but was not so sentenced. The majority in the case at bar fails to make the right connections from *Johnson*. The balance of the operative holding in *Johnson*, was:

> Art. IV, § 8, merely provides that a criminal defendant has an absolute right of removal if charged with an offense "punishable by death." As a result of the decisions in *Furman* and *Bartholomey*, rape and assault with intent to rape are simply not offenses "punishable by death" under existing law. The defendant is asking us to view the phrase "punishable by death" as if it were worded "formerly punishable by death" or "punishable by life imprisonment." We have no such authority to re-write a constitutional provision.

*Id.* at 193–94, 315 A.2d at 527.

In the present case there is no such dispute. All parties agree that at the time he was tried, Redman was covered by that constitutional provision and could have been sentenced to death. Johnson had not yet been subjected to a trial, fair or unfair and could not have been subjected to a sentence of death. In the present case, Redman has already been tried by a jury in the county where the murder occurred, has been sentenced, and could have been sentenced to death.

We changed no law in *Johnson*. The older cases I have discussed, *supra*, we left intact. Our limited holding was simply: "As the defendant Johnson was not charged with an offense punishable by death, he had no absolute right of removal under Art. IV, § 8, of the Constitution." *Id.* at 195, 315 A.2d at 528. In my view, the majority misinterprets the language of *Johnson*, when that language is considered in the context in which it was used and in the context of that case.

We did not adopt in *Johnson*, and, as the majority states in footnote 4, we have never yet adopted, a "structural error" analysis limiting standard. Such a standard, however, is appropriate in the instant case. I believe that, the error in the present case is structural, because unlike Johnson, Redman was charged under an actual constitutional death penalty statute and could have been, legally and constitutionally, sentenced to death, and, unlike Johnson, Redman was actual tried in a death penalty trial and was subjected to a death penalty proceeding, thus he had an automatic right to removal. Moreover, he was convicted by a jury he had an absolute right to avoid, that could have sentenced him to death, and he was in fact sentenced in a death penalty proceeding, *albeit* by the court. If the finding of structural error is necessary to presume prejudice, what happened here, I respectfully submit, was structural error.

I would reverse the Court of Special Appeals, reinstate the order of the trial court, and remand the case for a new trial in the Circuit Court.

Chief Judge Bell joins in this dissent.