868 A.2d 898

**Lebon WALKER, a/k/a L.B. Walker, Sr., a/k/a Labon B. Walter**

**v.**

**STATE of Maryland.**

**No. 1811, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Feb. 24, 2005.

256

Fred Warren Bennett (Rachel M. Kamins, on brief), Greenbelt, for appellant.

Mary Ann Ince (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel JAMES R. EYLER, KENNEY and ADKINS, JJ.

JAMES R. EYLER, J.

This is an appeal from an order of the Circuit Court for Montgomery County, denying a petition for post-conviction relief, based on ineffective assistance of counsel, filed by LeBon Walker, appellant. Relying on *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984),

appellant contends that the circuit court erred by failing to presume prejudice because of counsel's lack of participation at trial.

We hold that the circuit court was correct in concluding that *Cronic* did not apply in this case. Instead, the circuit court properly applied the two prong test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and found that (1) appellant's own conduct determined the strategy of his attorney, and (2) due to the overwhelming nature of the State's evidence, appellant suffered no prejudicial effects from the actions of his attorney.

The circuit court correctly concluded that appellant's ineffective assistance of counsel claim had no merit, and thus, we affirm the circuit court's judgment.

## FACTUAL SUMMARY

Appellant was charged by indictment with nine counts of theft over three hundred dollars and one count of conspiracy to commit theft.[1] Appellant was released on bond pending trial. Eight days prior to the beginning of trial, appellant absconded from the jurisdiction.[2] On January 13, 1993, the State filed a motion seeking a bench warrant. When appellant failed to appear for trial on January 18, 1993, the trial court granted the State's motion to try him *in absentia.* Appellant was tried by jury, *in absentia,* on January 18 through February 2, 1993.[3]

Appellant's counsel, Larry Greenberg, Esq. ("Mr. Greenberg"), declined to actively participate in the trial, expressing his view, based on conversations with appellant prior to the

---

1. Three defendants were indicted in this case: appellant, appellant's wife, Patricia Annette Lee, and Ms. Lee's mother, Anna L. Hall. The State's motion to consolidate was granted prior to trial.

2. Ms. Lee also failed to appear for trial.

3. Anna L. Hall was present at trial and was ultimately convicted of seven counts of theft over three hundred dollars and one count of conspiracy. When the jury deadlocked over two counts of theft, the State *nol prossed* them.

day appellant absconded, that appellant could not get a fair trial. He continued:

> Moreover, in reviewing my conversations with my clients, and their view of the past history of the case, I unhesitatingly believe that they would not want me in any way to participate any further in this trial. I will not further validate these proceedings by my participation and I respectfully ask this court to excuse my appearance from this case. If the court orders me to remain here, I will do so, but I shall not in any way participate further in the trial."[4]

After the State adduced testimony from forty-two (42) witnesses and introduced three hundred twenty-four (324) exhibits into evidence, appellant was convicted on all counts.

Appellant was apprehended in Zambia nine months after the trial and was returned to the United States. On January 14, 1994, the circuit court sentenced appellant to a total of

---

4. The Court of Appeals considered the following exchange in the direct appeal in this case:

COURT: May I ask you this, Mr. Greenberg, do you believe, as a strategy of defense of your clients and in their best interests, that it would be appropriate for you not to actively participate in the examination of any witnesses? Is that correct?

MR. GREENBERG: I do believe that.

COURT: Okay, Well, for the reasons I believe that I stated upon the record yesterday, and in the ruling that I make, I will deny the motion for you to be excused from the trial, and I believe as we discussed, you are required to participate in their defense since the trial against them is proceeding, and I believe you have stated upon the record that you propose to follow what you believe to be the rules of professional responsibility that apply to you and the manner which you have chose to safeguard their rights.

MR. GREENBERG: Thank you.

COURT: Thank you.

*Walker v. State,* 338 Md. 253, 256–57, 658 A.2d 239 (1995), *cert. denied,* 516 U.S. 898, 116 S.Ct. 254, 133 L.Ed.2d 179 (1995). The Court of Appeals then noted:

Adhering to his announced strategy, Greenberg waived opening statement, made no motions or objections, did not cross-examine any witnesses, and did not call any witnesses on behalf of Walker and Lee. At the end of the trial, he raised the possibility of arguing jury nullification in his closing statement. When the court refused to permit this, Mr. Greenberg made no closing argument at all.

*Id.* at 257, 658 A.2d 239.

twenty-four (24) years in prison, with credit for time served.[5] On March 4, 1994, appellant noted an appeal to this Court. Prior to this Court's consideration of the case, the Court of Appeals, on its own motion, issued a writ of certiorari to address whether a trial court may permit a criminal trial to proceed in the defendant's absence, if the defendant is informed of when the trial will begin and then fails to appear on that date. The Court of Appeals affirmed appellant's convictions, rejecting his claim that the trial court erred by trying him *in absentia. Walker v. State,* 338 Md. 253, 261, 658 A.2d 239 (1995), *cert. denied,* 516 U.S. 898, 116 S.Ct. 254, 133 L.Ed.2d 179 (1995). Appellant's claims of ineffective assistance of counsel were not addressed by the Court because they had not been raised and decided in the trial court. *Id.*

On July 31, 2003, the court conducted a hearing on appellant's petition for post-conviction relief. At the end of the hearing, the court orally denied post-conviction relief, and on September 3, 2003, executed an order to that effect. On October 2, 2003, appellant filed an application for leave to appeal the denial of post-conviction relief, which was denied by this Court on April 26, 2004. Appellant filed a motion to reconsider on May 4, 2004. By order dated August 23, 2004, this Court granted the application and transferred the case to the regular appeal docket.

Appellant's ineffective assistance of counsel argument is presented in two parts. First, appellant argues that Mr. Greenberg's failure to subject the State's case to "meaningful adversarial testing," and his silence throughout the trial, amounted to the constructive denial of counsel. Second, appellant argues that Mr. Greenberg's silence constituted structural error warranting a new trial.

## DISCUSSION

### *Standard of Review*

█ The question whether appellant is entitled to a presumption of prejudice is a question of law. In the absence of

---

5. Appellant had served 390 days in prison at the time he was sentenced.

such a presumption, the two part test described in *Strickland* governs, and the appropriate standard of review is that articulated in *State v. Jones,* 138 Md.App. 178, 209, 771 A.2d 407 (2001), *aff'd,* 379 Md. 704, 843 A.2d 778 (2004):

> The standard of review of the lower court's determinations regarding issues of effective assistance of counsel "is a mixed question of law and fact...." ... We "will not disturb the factual findings of the post-conviction court unless they are clearly erroneous." ... [T]he appellate court must exercise its own independent judgment as to the reasonableness of counsel's conduct and the prejudice, if any.... Within the *Strickland* framework, we will evaluate anew the findings of the lower court as to the reasonableness of counsel's conduct and the prejudice suffered.... As a question of whether a constitutional right has been violated, we make our own independent analysis by reviewing the law and applying it to the facts of the case.

*Id.* at 209, 771 A.2d 407 (citations omitted).

## I. Ineffective Assistance of Counsel

Our analysis on this issue is best accomplished in two steps. First, we must determine whether the circuit court erred in not presuming ineffectiveness. If we conclude that the circuit court did not err in that regard, although not argued on appeal, we shall address whether the circuit court correctly applied the *Strickland* standard to the facts of the case.

### A. The Right to Counsel Generally

The right of criminal defendants to effective legal counsel is guaranteed in both the Sixth Amendment of the United States Constitution [6] and Article 21 of the Maryland

---

6. The Sixth Amendment provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."

Declaration of Rights.[7]  Lawyers in criminal cases "are necessities, not luxuries." *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).  Without the presence of an attorney to safeguard the defendant's rights, "the right to a trial itself would be 'of little avail.' " *Cronic,* 466 U.S. at 653, 104 S.Ct. 2039 (quoting *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932)).  Unless the defendant receives the effective assistance of counsel, "a serious risk of injustice infects the trial itself." *Cuyler v. Sullivan,* 446 U.S. 335, 343, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

The State violates a defendant's right to effective assistance of counsel when it interferes with the ability of a defendant's attorney to make independent decisions as to how to conduct the defense. *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.  The Supreme Court addressed this issue on several occasions prior to issuing its decision in *Strickland. See id.* (discussing previous ineffective assistance cases).  An attorney himself, however, can also deprive a defendant of the right to effective counsel by failing to render adequate legal assistance. *Id.* This class of cases, presenting claims of actual ineffectiveness, occur more frequently, and were definitively addressed by the Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  *See Wiggins v. State,* 352 Md. 580, 603, 724 A.2d 1 (1999), *cert. denied,* 528 U.S. 832, 120 S.Ct. 90, 145 L.Ed.2d 76 (1999); *Oken v. State,* 343 Md. 256, 283, 681 A.2d 30 (1996), *cert. denied,* 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997); *Bowers v. State,* 320 Md. 416, 423, 578 A.2d 734 (1990).  There, the Court stated, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*

In *Strickland,* the Supreme Court established a two-part test for determining whether counsel was ineffective:

---

7.  Article 21 of the Maryland Declaration of Rights provides in pertinent part:  "That in all criminal prosecutions, every man hath a right ... to be allowed counsel...."

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. 2052. Thus, under *Strickland,* a defendant must establish both unreasonable performance by counsel and prejudice to his defense in order to succeed in a post-conviction action.

## B. The Presumption of Ineffectiveness

Appellant argues that the post-conviction court should have presumed that Mr. Greenberg was ineffective because of his non-participation at trial. Appellant maintains that applying the *Strickland* standard, instead of the presumption of ineffectiveness analysis described in *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), constituted reversible error.

▮▮▮ Before discussing *Cronic,* we note that the Supreme Court recognized in *Strickland* that both prongs of the ineffectiveness test, deficiency and prejudice, could be presumed in certain cases. 466 U.S. at 692, 104 S.Ct. 2052. The presumption of ineffectiveness is very limited, however, and includes only those cases where a defendant is actually or constructively denied counsel altogether, or where the state actively interferes with counsel's consultation with or representation of a defendant. *Id.* In many cases where ineffectiveness is presumed, the State is either directly responsible for the harm suffered by the defendant, or else could have easily prevented the harm, but failed to do so. *Id.* The *Strickland* Court also identified cases in which counsel has an actual conflict of interest as a third type of case in which there is a limited presumption of ineffectiveness. *Id.* In that situation, however, prejudice is presumed if the defendant is able to demonstrate that the conflict caused a deficiency in performance. *Id.*

*Accord, Smith v. Robbins,* 528 U.S. 259, 287, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

In *Cronic,* the Tenth Circuit Court of Appeals reversed a conviction, based on the overall circumstances, utilizing a presumption of ineffective assistance of counsel. The defendant in *Cronic* was represented by a young lawyer with a real estate practice who had never tried a jury case before. 466 U.S. at 648, 104 S.Ct. 2039. The district court appointed the attorney to represent the defendant only twenty-five (25) days before trial, even though the government had been preparing the case for four and a half (4½) years. *Id.* The Supreme Court reversed, holding that no presumption of ineffectiveness was applicable, and remanded the case to the state court for a determination of actual ineffectiveness under *Strickland. Id.* at 667, 104 S.Ct. 2052.

The *Cronic* Court recognized in dicta that, when counsel is denied at a critical stage of the proceedings, ineffectiveness may be presumed. *Id.* at 659, 104 S.Ct. 2039. The Court further explained, "[s]imilarly, if counsel entirely fails to subject the prosecutions's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* "There are circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 662, 104 S.Ct. 2039.

In *Smith v. Robbins,* 528 U.S. 259, 284–289, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), the Supreme Court reiterated the three categories of cases in which ineffectiveness is presumed. *Id.* at 287, 120 S.Ct. 746. The categories in *Smith* were drawn directly from *Strickland:* denial of counsel, "various kinds of state interference with counsel's assistance," and "when counsel is burdened by an actual conflict of interest." *Id.* (citing *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052). The Court further elaborated on presumed prejudice in its decision in *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). In *Mickens,* the Court again stated that the *Cronic* exception to case-by-case inquiry applies only when

assistance of counsel has been denied entirely, or during a critical stage of the proceeding, or when defendant's attorney actively represented conflicting interests.

The Maryland Court of Appeals first addressed the presumption of ineffectiveness in *Redman v. State*, 363 Md. 298, 768 A.2d 656 (2001). The *Redman* Court quoted a case from the First Circuit stating,

[T]he approach suggested [by *Cronic*] is in all events the exception, not the rule—and it can be employed only if the record reveals presumptively prejudicial circumstances such as an outright denial of counsel, a denial of the right to effective cross-examination, or a complete failure to subject the prosecution's case to adversarial testing. The *Cronic* Court itself warned that, in most cases a showing of actual prejudice remained a necessary element. The Court stated: "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."

*Id.* at 311, 768 A.2d 656 (quoting *Scarpa v. DuBois*, 38 F.3d 1, 12 (1st Cir.1994) (citations omitted)).

The *Redman* Court declined to presume prejudice when an attorney in a capital murder case failed to inform his client of a defendant's absolute right to removal to a different court under the state constitution. *Id.* at 313, 768 A.2d 656. The Court stated that

trial counsel's failure to inform Petitioner of his constitutional right to automatic removal, without more, does not *necessarily* render the resulting criminal trial fundamentally unfair or unreliable. Unlike counsel's absence during a critical part of the trial or counsel remaining silent throughout the trial, failing to remove a trial is not a circumstance "so likely to prejudice the accused that the cost of litigating [its] effect in a particular case is unjustified."

*Id.* (emphasis in original) (citing *Cronic*, 466 U.S. at 658, 104 S.Ct. 2039).

Courts have specifically applied the *Cronic* presumed ineffectiveness exception in cases in which the defendant was

entirely unrepresented,[8] in which defense counsel fulfilled none of the functions of an attorney,[9] and in which defense counsel was absent from the courtroom during a critical stage of the trial.[10]  As previously noted, even before *Cronic*, the Supreme Court found error without any showing of ineffectiveness when counsel was absent,[11] or was otherwise prevented from assisting the accused during a critical stage of the defense.[12]  *Cronic* has also been applied in the sleeping lawyer

---

**8.**  *See, e.g., United States v. Mateo*, 950 F.2d 44, 48–50 (1st Cir.1991)(vacating and remanding for resentencing where defendant fired appointed counsel prior to the beginning of the sentencing hearing, and repeatedly requested that new counsel be appointed).

**9.**  *See, e.g., Tucker v. Day*, 969 F.2d 155, 159 (5th Cir.1992) (granting habeas relief where counsel appointed for resentencing hearing did not consult with defendant prior to hearing, had no knowledge of the facts of the case, and acted as a mere spectator.  At one point when defendant asked "[d]o I have counsel here," his attorney responded, "[o]h, I am just standing in for this one."); *Martin v. Rose*, 744 F.2d 1245, 1247 (6th Cir.1984) (finding ineffective assistance when defendant's attorney remained silent throughout trial because he erroneously believed that participation would either waive pretrial motions or render their denial harmless error); *State v. Harvey*, 692 S.W.2d 290, 291–92 (Mo.1985) (ordering a new trial for defendant whose attorney did not participate at the capital trial for a double homicide because he was unprepared and physically exhausted).

**10.**  *See, e.g., Green v. Arn*, 809 F.2d 1257, 1259–64 (6th Cir.1987), *vacated*, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987), *reinstated*, 839 F.2d 300 (1988), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 979 (1989) (holding that absence of defense counsel during cross-examination of key government witness by attorney for a co-defendant was presumptively prejudicial).

**11.**  *See, e.g., White v. Maryland*, 373 U.S. 59, 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (holding that when defendant plead guilty at preliminary hearing in absence of defense counsel, Court did "not stop to determine whether prejudice resulted"); *Hamilton v. Alabama*, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (stating that denial of counsel at arraignment required reversal of conviction even though no prejudice was shown).

**12.**  *See, e.g., Geders v. United States*, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (finding that sequestration order preventing defendant from consulting with attorney during overnight recess between his direct and cross-examination violated his constitutional right to counsel); *Herring v. New York*, 422 U.S. 853, 863–65, 95 S.Ct. 2550, 45

context, when an attorney was physically present but asleep during important parts of the trial.[13]

## C. The Applicable Legal Standard

Appellant argues that, under *Cronic*, prejudice should be presumed as a result of his attorney's resolution to "not in any way participate" in appellant's trial. The Supreme Court observed in *Cronic* that the right to effective counsel is the right of the accused to require the government's case "to survive the crucible of meaningful adversarial testing." *Cronic*, 466 U.S. at 656, 104 S.Ct. 2039. "[I]f the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated." *Id.* at 657, 104 S.Ct. 2039. Appellant analogizes this case to other cases, discussed above, in which trial counsel was absent, intoxicated, asleep, or refused to participate. He alleges that trial counsel's lack of activity on his behalf had the same effect as if there had been no attorney in the courtroom.

---

L.Ed.2d 593 (1975) (overturning statute which allowed trial judge discretion to refusal to allow defense counsel to make closing argument because the statute denied defendant's constitutional right to counsel); *Brooks v. Tennessee*, 406 U.S. 605, 612–613, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (reversing and remanding case for new trial when state statute required defendant to testify before any other defense evidence was offered, thereby violating defendant's right to "guiding hand of counsel").

**13.** *See, e.g., Burdine v. Johnson*, 262 F.3d 336, 341 (5th Cir.2001) (*en banc*), *cert. denied*, 535 U.S. 1120, 122 S.Ct. 2347, 153 L.Ed.2d 174 (2002) (allowing habeas relief when defense counsel slept through "not insubstantial" portions of the trial, stating, "[w]hen we have no basis for assuming that counsel exercised judgment on behalf of his client during critical stages of trial, we have insufficient basis for trusting the fairness of that trial and consequently must presume prejudice"); *Tippins v. Walker*, 77 F.3d 682, 687 (2d Cir.1996) (concluding that *Cronic* should be applied because the basic assumption that counsel was "present and conscious to exercise judgment, calculation and instinct, for better or worse" could not be applied when counsel was "unconscious at critical times"); *Javor v. United States*, 724 F.2d 831, 833 (9th Cir.1984) (holding that no separate showing of prejudice was necessary to demonstrate ineffective assistance of counsel because counsel's sleeping during a substantial portion of the trial was "inherently prejudicial").

Maryland has not considered an ineffective assistance case in which an attorney has remained silent throughout a trial. We are guided by precedents established by the Supreme Court and persuaded by the interpretations of other state and federal courts.

### 1. *Smith v. Robbins,* 528 U.S. 259 (2000)

In *Smith v. Robbins,* the Supreme Court reiterated the three categories of cases in which ineffectiveness, or at least prejudice, should be presumed. 528 U.S. at 284–89, 120 S.Ct. 746. Ineffectiveness should be presumed if counsel is denied or the state interferes with counsel's assistance, and prejudice should be presumed if counsel is burdened by an active conflict of interest. *See id.* at 287, 120 S.Ct. 746. None of those conditions is satisfied in this case.

Clearly, appellant was not denied counsel. Mr. Greenberg had more than six months to consult with appellant and prepare arguments prior to the trial date, and did, in fact, speak to appellant about the case on several occasions. Prior to the beginning of the trial, Mr. Greenberg argued strenuously against trying appellant *in absentia.* Once the trial began, Mr. Greenberg was present in the courtroom, awake and sober, throughout the entire trial process.

The State did not interfere with counsel's assistance in any way. Mr. Greenberg was fully prepared to try the case. Appellant does not allege that he was prevented by the State from consulting with Mr. Greenberg in any way, or at any time, before, during, or after the trial. Mr. Greenberg never testified to any conflict of interest at the post-conviction hearing, nor does appellant argue that a conflict of interest existed. Therefore, this case does not fall into one of the three categories of cases in which the Supreme Court has determined that ineffectiveness or prejudice should be presumed.

### 2. *Warner v. Ford,* 752 F.2d 622 (11th Cir.1985)

The Eleventh Circuit Court of Appeals decision in *Warner v. Ford,* 752 F.2d 622 (11th Cir.1985), is persuasive. In

*Warner*, the Eleventh Circuit specifically addressed the Sixth Circuit's decision in *Martin v. Rose*, 744 F.2d 1245 (6th Cir.1984).[14] In *Warner*, the Eleventh Circuit considered a claim of ineffective assistance of counsel in a case involving defense counsel's silence during the defendant's trial. The defendant in *Warner* was convicted of four counts relating to an armed robbery. Two co-defendants were tried in the same proceeding with the defendant in that case. Defendant's attorney did not actively participate in the trial, except to move for a directed verdict on one count, request a mistrial three times, and to recommended that his client not take the witness stand when he was called by his co-defendants to testify in their defenses. *Id.* at 624.

In finding that Warner was not entitled to a presumption of prejudice, the Eleventh Circuit acknowledged the Sixth Circuit decision in *Martin*, but distinguished Warner's case on five grounds: (1) Martin denied the charges against him in subsequent proceedings;[15] (2) the testimony of complaining witnesses against Martin was subject to question;[16] (3) Martin was a single defendant, while Warner was one of three co-

---

**14.** In *Martin*, the Sixth Circuit applied the presumed prejudice standard from *Cronic*, despite the fact that the defendant agreed to the silence tactic and the court found that the attorney's silence constituted a strategy. Defense counsel's only participation in the trial was to make a brief statement to the jury explaining that the defendant would be relying on certain pretrial motions, and, therefore, although pleading not guilty, would not be taking part in the trial.

**15.** Martin was found guilty on two counts of criminal sexual conduct involving his two minor stepdaughters. He continued to assert his innocence throughout the post-conviction proceedings. Warner attempted to enter a guilty plea in return for a reduced sentence. The court rejected the plea and continued with the trial, at the conclusion of which Warner was found guilty on all charges.

**16.** The only evidence against Martin was the uncorroborated testimony of his two stepdaughters. Both of Warner's co-defendants testified against him, as did two police officers who witnessed the crime, and others who participated in a high speed chase after Warner fled the scene. Evidence of the crimes was found in Warner's possession and in the car he used as a getaway vehicle. In addition, Warner admitted to the crimes for which he was charged.

defendants; (4) the evidence against Martin was not as great as that against Warner; and (5) Martin's defense counsel was not prepared at the time of the trial, while Warner's attorney professed to be ready to proceed. *Id.* at 624–25.

After making these distinctions, the Eleventh Circuit further elaborated upon the relevant inquiry as to whether counsel's decision to stand mute during the trial would warrant a presumption of prejudice:

> Silence can constitute trial strategy. Whether that strategy is so defective as to negate the need for a showing of prejudice to establish ineffective assistance of counsel must be judged on a case-by-case basis. *Washington* has established that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* [466] U.S. at [688–91], 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694–95. Thus, in order for a petitioner with an ineffective assistance of counsel claim to prevail over his former counsel's assertion of strategy, he must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

*Warner,* 752 F.2d at 625.

The facts in this case are more similar to the facts of *Warner* than the facts of *Martin.* Though Walker professed his innocence before trial, and continues to deny that he was guilty of the charges brought against him, the documentary and testimonial evidence against him was "overwhelming." Appellant was one of three co-defendants, and though his own attorney did not actively participate in trial, counsel for Ms. Hall did challenge the case presented by the State. Finally, Mr. Greenberg had six months to prepare for the trial. He received "voluminous" discovery, and discussed the case with his client several times prior to appellant's flight from the country. Furthermore, Mr. Greenberg testified that he was prepared to actively represent appellant at trial, but chose not to deliberately because of appellant's absence. Under the

reasoning of the Eleventh Circuit set forth in *Warner,* prejudice should not be presumed in this case.

### 3. *United States v. Sanchez,* 790 F.2d 245 (2d.Cir.1986)

The case before us can be distinguished from other cases in which courts presumed prejudice by the fact that appellant was tried *in absentia* after absconding from the country to avoid going to court. Appellant had full knowledge of the date and time of his trial, yet chose not to appear. Appellant's obstructive conduct, which necessitated that he be tried *in absentia,* was the reason Mr. Greenberg adopted a strategy of silence, obviously hoping for a reversal on direct appeal. Appellant now complains that the strategy he forced Mr. Greenberg to adopt constituted ineffective assistance of counsel.

The post-conviction court relied on the reasoning expressed by the Second Circuit Court of Appeals in *United States v. Sanchez,* 790 F.2d 245 (2d. Cir.1986), *cert. denied,* 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986), to support its decision not to apply the *Cronic* presumed prejudice standard. In *Sanchez,* as here, the trial court ruled that Sanchez be tried *in absentia* after he failed to appear for trial. *Id.* at 248. Defense counsel's "limited defense activity" in the case consisted solely of moving for judgment of acquittal and objecting twice to the court's jury instruction regarding Sanchez's absence. *Id.* at 248, 253. The Second Circuit rejected Sanchez's claim of ineffective assistance of counsel, noting, in part, that the defense attorney had not remained silent, but, rather, had "in fact participated by objecting to the trial *in absentia* and to the flight instruction and by moving for judgment of acquittal." *Id.* Doing this and nothing more, the Court concluded, constituted trial strategy. *Id.*

In rendering its decision in the case at bar, the circuit court quoted *Sanchez,* stating, "[appellant's] own obstructive conduct precluded his attorney from pursuing an intelligent active defense." The court hesitated to reverse the judgment in this case for fear that such a decision would essentially "reward

[appellant] by allowing him to intentionally sabotage his own defense." [17]

### 4. *Walker v. State*, 338 Md. 253 (1995)

Though the Court of Appeals did not decide the issue of ineffective assistance of counsel, instead advising that such a claim should be brought in a post-conviction action, we cannot discount the guidance offered in the Court of Appeals opinion deciding the first appeal in this case. There, acknowledging

---

17. Appellant points out that other courts have expressed similar reluctance to grant a new trial in cases in which the defendant was absent or otherwise uncooperative, but nonetheless concluded that counsel's dereliction should not inure to the defendant's detriment. *See, e.g., People v. McKenzie*, 34 Cal.3d 616, 194 Cal.Rptr. 462, 668 P.2d 769, 774 (1983) (discounting defendant's failure to cooperate with his attorney and ordering a new trial where attorney flatly refused to participate in the trial beyond appearing in court and sitting next to his client. *Id.* at 774–75. The Supreme Court of California remarked, "Although we are extremely reluctant to appear to reward such tactics, we nevertheless conclude that reversal is necessary because, on this record, the defendant was unquestionably deprived of the effective assistance of counsel ....the ultimate responsibility for counsel's non-participation lies not with the defendant, but solely with counsel." *Id.* at 779); *State v. Wiggins*, 158 N.J.Super. 27, 385 A.2d 318 (1978) (holding that defendant had not validly waived counsel and an attorney fired by the defendant immediately before trial began should have been instructed by the court to participate as actively as the circumstances allowed in defendant's trial. The court likened the trial to "an ex parte nonadversarial, *in absentia* proceeding, not unlike a grand jury presentation ....in contrast to a conventional trial, this was almost a charade." *Id.* at 322).

Unlike the case before us, in neither of the above cases had the defendant absented himself prior to trial coupled with an assertion by counsel that non-participation was a conscious strategy believed to be in the defendants' best interest. Other cases cited by appellant are similarly distinguishable or distinguishable because counsel conceded guilt without authority.

Most recently, in *Florida v. Nixon*, — U.S. ——, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), the Supreme Court declined to presume prejudice in a case where the defendant's attorney strategically conceded guilt during the guilt phase of a capital murder trial without the express consent of his client. *Id.* at 559–61. Instead, the Court reversed and remanded the case to the Florida State Supreme Court for consideration of the attorney's actions under the *Strickland* standard, emphasizing how rarely a presumption of ineffectiveness should be applied. *Id.* at 562–63.

appellant's assertion that Mr. Greenberg's "silent strategy" constituted ineffective assistance, the Court of Appeals stated "Walker ... had a lawyer representing [him] at trial. Greenberg expressly stated that his non-participation served the wishes and the best interests of his clients .... we will not ignore the fact that there was a lawyer in the courtroom on the appellant's behalf." *Walker,* 338 Md. at 261, 658 A.2d 239. We, too, refuse to ignore that Mr. Greenberg consciously adopted a trial strategy.

The presumption discussed in *Cronic* and other cases is a very narrow exception to the general rule that a criminal defendant must prove deficiency in performance and prejudice to sustain a claim for ineffective assistance of counsel. Appellant has failed to establish that the circumstances in this case were so unjust as to justify use of the *Cronic* exception.

We fear that if we allow a new trial in this case, it will open the door for criminal defendants to engineer an "automatic" new trial by failing to appear for trial. If defense counsel, with or without consent, then chooses not to participate, and if the defendant is not successful on direct appeal, the defendant will obtain a new trial on ineffective assistance of counsel grounds. We decline to open the door for such manipulation of the system. Therefore, we hold that the circuit court was correct in applying the *Strickland* standard.

## D. Application of *Strickland* Test

Under *Strickland,* a post-conviction court need not examine both prongs of the *Strickland* test if it is able to conclusively establish that one of the prongs is not satisfied. *See Strickland,* 466 U.S. at 697, 466 U.S. 668. In *Strickland,* the Court held that the trial court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* "The object of an ineffectiveness claim is not to grade counsel's performance," and so the Supreme Court stated that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed." *Id.*
Nevertheless, we shall address both prongs.

1. *Were the actions of appellant's attorney reasonable?*

Under the standard announced in *Strickland,* the
post-conviction court is required to "judge the reasonableness
of counsel's challenged conduct on the facts of the particular
case, viewed as of the time of counsel's conduct." *Strickland,*
466 U.S. at 690, 104 S.Ct. 2052. All circumstances are to be
considered. *Id.* at 688, 104 S.Ct. 2052. The court's scrutiny
of Mr. Greenberg's conduct was required to be "highly defer-
ential." *See id.* at 689, 104 S.Ct. 2052. It is incumbent upon
the post-conviction court to "indulge a strong presumption
that counsel's conduct falls within the wide range of reason-
able professional assistance," as "[t]here are countless ways to
provide effective assistance in any given case," and "[e]ven the
best criminal defense attorneys would not defend a particular
client in the same way." *Id.* Thus, "[a] fair assessment of
attorney performance requires that every effort be made to
eliminate the distorting effects of hindsight, to reconstruct the
circumstances of counsel's challenged conduct, and to evaluate
the conduct from counsel's perspective at the time." *Id.* To
prevail, appellant "must overcome the presumption that, under
the circumstances, the challenged action 'might be considered
sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana,* 350
U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

Appellant characterizes Mr. Greenberg's actions as
"remaining mute," "silent throughout the trial," a "mere fix-
ture," and doing "nothing whatsoever." The record reflects
that Mr. Greenberg argued strenuously against conducting the
trial *in absentia* prior to the beginning of trial. Once the trial
began, Mr. Greenberg interposed objections and cited court
rules to the court. Mr. Greenberg also repeatedly responded
to the trial court's numerous inquiries regarding admission of
the State's exhibits and attended the multiple bench confer-
ences conducted during the trial. At the post-conviction hear-
ing, Mr. Greenberg testified that he did not seek to assert
himself in the affairs of the trial court. He explained that his

involvement was limited to that which was courteous to the court and the other attorneys.

Mr. Greenberg testified at the post-conviction hearing that, if appellant had been present at the trial, Mr. Greenberg would have, at the very least, cross-examined the witnesses called by the State, objected to improper evidence submitted by the State, called rebuttal and character witnesses on behalf of appellant, given a closing statement, and made a motion for judgment of acquittal to protect appellant's rights on appeal.

Though the post-conviction court conceded that there was no proof that appellant actually directed or consented to the strategy implemented by Mr. Greenberg, there was testimony that Mr. Greenberg had been in frequent contact with appellant and "unhesitatingly believe[d] that [appellant] would not want [him] in any way to participate any further in this trial." Clearly, Mr. Greenberg's silence was a deliberate strategy adopted to serve the best interests of appellant.

Mr. Greenberg believed at trial, and continued to assert at the post-conviction hearing, that it was unconstitutional for the trial court to try appellant *in absentia*. He stated on the trial court record, "I believe ... without the defendant's presence here, I cannot effectively represent my clients,[18] and to proceed on their behalf in any way would be a sham." Throughout trial, Mr. Greenberg intended to make a closing statement to the jury, arguing that the proceeding was unfair, and therefore, the jury should return a verdict of not guilty. Mr. Greenberg disclosed his intention to argue jury nullification during a conference with the trial court judge. The trial court ordered Mr. Greenberg not to make a jury nullification argument. Mr. Greenberg made sure his objections to the court's ruling were on the record. When the time came for closing arguments, Mr. Greenberg elected not to make any statement at all.

---

18. Mr. Greenberg was counsel of record for both appellant and his wife, Patricia Annette Lee. The issue of dual representation was not raised on appeal.

There is a difference between an inadvertent mistake of counsel, which results in harm to the client, and a strategy deliberately implemented to increase the client's chances of success on appeal. As recognized by the circuit court in its oral ruling, "[t]here are instances, trial tactics, where no questions are asked on cross examinations [sic] and no objections are made." Mr. Greenberg intended his silence to conclude in an argument for jury nullification. When that avenue was denied to him by the trial court, Mr. Greenberg still maintained his silence, hoping to increase appellant's chances of success on appeal. While this conduct may not violate the first prong of the *Strickland* test, we need not rest our decision on that ground because of appellant's failure to demonstrate prejudice.

### 2. *Was appellant prejudiced by errors committed by his attorney?*

Even if counsel commits a professionally unreasonable error, under *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Maryland cases characterize the showing necessary to establish prejudice as "a substantial possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Oken v. State*, 343 Md. 256, 284, 681 A.2d 30 (1996), *cert. denied*, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997). This is so because "[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial." *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. 2052.

Though appellant's counsel followed a strategy of silence and non-participation, it is clear from the record that the State's evidence was not wholly untested, as characterized

in the appellant's brief. Co-defendant, Ms. Hall, was present at the trial. Ms. Hall was indicted for the same offenses as appellant. The charges against Ms. Hall arose from the same operative facts as the charges against appellant. Indeed, one of the charges for which both Ms. Hall and appellant were convicted was conspiracy, which requires that both parties act for the furtherance of a common plan or scheme. *See Quaglione v. State*, 15 Md.App. 571, 292 A.2d 785 (1972).

The State presented testimony from forty-two (42) witnesses and introduced three hundred twenty-four (324) exhibits as evidence. The State's evidence was challenged in front of the jury by virtue of the defense mounted by counsel for Ms. Hall. While counsel for Ms. Hall did make some negative comments concerning appellant, nevertheless, appellant does not identify any questions Mr. Greenberg should have asked on cross-examination which were not asked by counsel for Ms. Hall. He does not identify any witnesses that should have been called in his defense. Though appellant is clearly unhappy with the result, he does not identify a single specific error committed by Mr. Greenberg.

In its decision on the record, addressing the possibility that appellant suffered prejudice from Mr. Greenberg's silence, the post-conviction court stated, "[t]he evidence in this case was overwhelming. I'm satisfied that no different result would have occurred." Even if Mr. Greenberg had taken every possible step, filed every possible motion, and made every possible argument, there is no reasonable probability that appellant would have been acquitted or received less that the sentence that was imposed. We need discuss this no further because appellant has not even argued actual prejudice; his sole argument is that the court erred in failing to presume it.

### E. Conclusion

We decline to apply the presumption of prejudice found in *Cronic* and apply, instead, the two prong analysis of *Strickland*. The inaction of appellant's attorney at trial was a strategy undertaken to benefit appellant. Though the strate-

gy was unsuccessful, we do not find ineffective assistance of counsel. Therefore, we affirm the circuit court's denial of appellant's request for post-conviction relief.

## II.  Structural Error

Appellant argues that Mr. Greenberg's silence throughout appellant's trial was structural error warranting a new trial. Appellant did not raise a structural error argument at his post-conviction hearing, in his application for leave to appeal, or in his motion to reconsider denial of application for leave to appeal. Consequently, appellant has failed to preserve this issue for our review. *See* Md. Rule 8–204(b)(2) (application for leave to appeal, "shall contain a concise statement of the reasons why the judgment should be reversed or modified and shall specify the errors allegedly committed by the lower court"). Because the basis for appellant's structural error argument is so similar to his ineffective assistance of counsel argument, we shall address it in the interest of completeness.

Some types of trial error are so egregious that the United States Supreme Court has identified them as structural errors that so "affect [ ] the framework within which the trial proceeds that they require automatic reversal." *Arizona v. Fulminante*, 499 U.S. 279, 310–11, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)(Rehnquist C.J., for the majority in part and dissenting in part); *see also Brecht v. Abrahamson*, 507 U.S. 619, 629–30, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (holding structural errors "require[ ] automatic reversal ... because they infect the entire trial process"); *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (stating that certain errors impact on rights "so basic to a fair trial" that "they can never be treated as harmless error"). If a structural error is committed, prejudice is assumed.

Structural error is a very narrow doctrine, however. Indeed, the Eighth Circuit Court of Appeals explained the parameters of the doctrine as follows:

[I]t will be a rare event when the failing of counsel rise to the level of structural error. As a practical matter, it is difficult to imagine situations that would trigger structural error analysis beyond the failure on the part of counsel to inform a defendant of certain basic rights, such as the right to trial by jury, to self-representation, or to an appeal as of a matter or right. Thus, the narrow holding of this case is that failure on the part of counsel to ensure that mechanisms fundamental to our system of adversarial proceedings are in place cannot . . . constitute harmless error.

*McGurk v. Stenberg,* 163 F.3d 470, 475 (8th Cir.1998).

Though case law on structural error is sparse in Maryland, this Court considered the doctrine most recently in *Whitney v. State,* 158 Md.App. 519, 857 A.2d 625 (2004). In *Whitney,* this Court considered whether defendant's fundamental rights were impaired by the trial court's erroneous assertion that each party was only entitled to four peremptory challenges, thereby depriving defendant of six peremptory challenges during jury selection. *Id.* at 524–25, 857 A.2d 625. The *Whitney* Court held that impairment of peremptory challenges was not a structural error that relieved defendant of the burden of establishing prejudice, because it did not rise to the level of "extraordinary error" the Supreme Court has recognized as justifying relief from defendant's burden of proof.[19] *Id.* at 538, 857 A.2d 625.

For the same reasons we conclude above that appellant's ineffective assistance of counsel claim has no merit, we also conclude that Mr. Greenberg's actions did not rise to the level

---

**19.** Defects which have been held to constitute structural error include a defective reasonable doubt instruction, *see Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); racial discrimination in grand jury selection, *see Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); denial of a public trial, *see Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); total deprivation of counsel, *see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and a judge who is not impartial, *see Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

of structural error entitling appellant to a new trial. Therefore, we affirm the judgment of the circuit court.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**